ORIGINAL

KC FILED

NOV 27 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., a Delaware Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>RICCI/WELCH, INC., an Illinois corporation,<br><br>Defendant. | CASE NO:<br><br>07CV6665<br>JUDGE MORAN<br>MAGISTRATE JUDGE DENLOW<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

Plaintiff SPRINT COMMUNICATIONS COMPANY L.P. for its Complaint against Defendants RICCI/WELCH, INC., (hereafter "RICCI/WELCH") alleges and states as follows:

### JURISDICTION AND VENUE

1. Plaintiff, SPRINT COMMUNICATIONS COMPANY L.P. (hereinafter "SPRINT"), with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas.

2. Defendant RICCI/WELCH, INC. (hereinafter "RICCI/WELCH") with its principal place of business at 4050 Industrial Avenue, Rolling Meadows, Illinois. The acts and/or omissions giving rise to this action occurred in Lincolnwood, Cook County, Illinois.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00). This Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1).

5. Venue is proper in this district under 28 U.S.C. §1391(a)(3) and (c).

### GENERAL FACTUAL BACKGROUND

6. SPRINT is a telecommunications company that provides telecommunication services to individual and commercial users. SPRINT's telecommunication services are provided

1

through, among other means, a nationwide network of fiber-optic cable which is buried underground. SPRINT's fiber-optic cable network is capable of carrying hundreds of thousands of telecommunications.

7. By agreement with and/or permit from Lincolnwood, Illinois, SPRINT possesses the right to install and operate a fiber-optic cable system in the right-of-way of certain public roads and highways in Lincolnwood, Illinois. By virtue of this agreement and/or permit, SPRINT is entitled to undisturbed possession of that right. In accordance with this agreement and/or permit, SPRINT installed a fiber-optic cable and related facilities, in the right-of-way at or about 7390 Lincolnwood Avenue, in Lincolnwood, Illinois.

8. Upon information and belief, at the time of the acts and/or omissions giving rise to this action, RICCI/WELCH was performing excavation work to install a sewer line in the right-of-way of 7390 Lincolnwood Avenue, in Lincolnwood, Illinois.

9. Upon information and belief, the RICCI/WELCH personnel performed the work described in paragraph 8 and Defendants had the responsibility for supervising and controlling the work and ensuring the work was performed in a safe and prudent manner and in compliance with all applicable statutes, regulations and industry standards.

## RELEVANT STATUTORY PROVISIONS

10. At the time of the acts and/or omissions giving rise to this action, the Illinois Underground Facilities Damage Prevention Act, 220 ILCS 50/1 - 50/14 (the "Damage Prevention Act"), specifically 220 ILCS 50/4(d), required every person who engaged in non-emergency excavation to provide notice not less than 48 hours (exclusive of Saturdays, Sundays and holidays) in advance of the start of the excavation to the owners or operators of underground utility facilities in and near the excavation area through the State-Wide One-Call Notice System (JULIE"). Upon receipt of notice from JULIE, the operators of any underground telecommunications systems in or near the excavation area were required by 220 ILCS 50/10 to mark the approximate location of their facilities within 48 hours with orange paint, flags or other suitable markings. "Approximate

location" was defined as "a strip of land at least 3 feet wide but not wider than the width of the underground ... facility plus 1-1/2 feet on either side of such facility."

11. In addition to providing the notice required by 220 ILCS 50/4(d), the Damage Prevention Act, specifically 220 ILCS 50/4(a) and (b), required every person who was engaged in non-emergency excavation to take reasonable action to inform himself of the location of any underground utility facilities in and near the excavation area and to plan the excavation to avoid or minimize interference with underground utility facilities in or near the excavation area. 220 ILCS 50/4(c), also required every person to outline the dig site.

12. Pursuant to 220 ILCS 50/9, if it is shown by competent evidence in any action for damage to an underground utility facility that the damages resulted from excavation and that the person engaged in excavation failed to comply with any provisions of the Damage Prevention Act, that person "shall be deemed prima facie guilty of negligence".

## RELEVANT REGULATIONS

13. At the time of the acts and/or omissions giving rise to this action, federal OSHA regulations, specifically 29 C.F.R. §1926.651(b)(10-(3), required an excavator to: (a) determine the estimated location of all underground utility facilities that reasonably may be expected to be encountered during excavation prior to the beginning of the excavation; (b) contact the owners or operators of any underground utility facilities within the established or customary local response times, advise them of the work and ask them to mark the locations of their underground facilities prior to the start of the excavation; and (c) determine the exact location of all underground utility installations by safe and acceptable means when the excavation approaches the estimated location of those underground facilities.

## RELEVANT INDUSTRY STANDARDS

14. At the time of the acts and/or omissions giving rise to this action, the American National Standards Institute ("ANSI") had promulgated ANSI/EIA/TIA Standard 590A-1996, entitled "Standard for Physical Location and Protection of Below-Ground Fiber-Optic Cable Plant"

3

(the "ANSI Standard"). The ANSI Standard covers "protective measures that should be observed to reduce the probability of damage resulting from work operations in the vicinity of [underground] cable."

15. The ANSI Standard provides that an excavator should: (a) be knowledgeable about, and follow, damage prevention laws and 29 C.F.R. § 1926.651); (b) notify all possibly affected utility facility owners and/or the appropriate One-Call notification center of the work to be performed; and (c) comply with all applicable statutes, OSHA regulations and accepted industry practices.

16. At the time of the acts and omissions giving rise to this action, the National Utility Locating Contractors Association ("NULCA") had promulgated standards for excavating in the vicinity of underground utilities entitled, "Excavation Practices & Procedures for Damage Prevention: A Guide for Protection of Underground Facilities" (1996) (the "NULCA Standards"). The purpose of the NULCA Standards is to ensure jobs are completed on time and to reduce the potential for an accident by utilizing good standards and practices. According to the National Transportation Safety Board, the guidelines set forth in the NULCA Standards incorporate federal OSHA requirements and identify "best practices" applicable to excavation work that promulgate good practices among the excavation community.

17. The NULCA Standards provide that an excavator should: (a) provide notice of excavation to, and obtain a "dig ticket" from, the appropriate One-Call notification center; (b) meet with any utility facility owners to review the excavation area; and (c) refrain from excavating until all underground utility facilities in the excavation area had been marked.

18. At the time of the acts and omissions giving rise to this action, the United States Department of Transportation ("USDOT") had promulgated a compendium of "best practices" for avoiding damage to underground facilities during excavation entitled, "Common Ground: Study of One-Call Systems in Damage Prevention Best Practices" (Aug. 1999). The purpose of the "best practices" developed by the Excavation Task Team is to "contribute to the reduction in the

possibility and/or severity of damages or intrusions to [underground utility] facilities." The criteria used to determine what practices should be considered "best practices" for excavators were: (a) the practices were actually being used and could be documented; (b) the practices were both practical and cost effective with current technology; and (c) the practices were considered reasonable by the majority of the constituency that would be asked to implement the practices.

19. The "best practices" for excavators include: (a) using reasonable care to avoid damaging underground facilities and planning the excavation to avoid damage to, and minimize interference with, underground utility facilities; (b) adhering to all applicable federal and state safety regulations, including those concerning training, as they relate to the protection of underground facilities; (c) providing notice of excavation to, and obtaining a "dig ticket" from, the appropriate One-Call notification center; and (d) meeting with any utility facility owners to review the excavation area.

20. At the time of the acts and omissions giving rise to this action, JULIE was, pursuant to the Damage Prevention Act, operating as a One-Call notification center for the purposes of receiving the notices of excavation required by the Damage Prevention Act. JULIE had published an "Excavators Manual" explaining the Damage Prevention Act and setting forth recommended practices for safe excavation.

21. JULIE's recommendations for safe excavation include: (a) providing notice of excavation to JULIE before beginning excavation; (b) maintaining a record of the notification to JULIE and of the dig number furnished by JULIE upon receipt of the notice of excavation; and (c) digging in a reasonable and prudent manner, taking all necessary and required measures to avoid damaging underground facilities.

### FIRST CLAIM FOR RELIEF – TRESPASS

22. SPRINT adopts and incorporates by reference all allegations contained in paragraphs 1 through 21 above.

23. Upon information and belief, on August 26, 2004, RICCI/WELCH was excavating

5

to install a sewer line in the right-of-way at or about 7390 Lincolnwood Avenue.

24. Upon information and belief, on August 26, 2004, without SPRINT's knowledge or consent, and against SPRINT's will, RICCI/WELCH severed a SPRINT fiber-optic cable while performing the excavation described above. At the point RICCI/WELCH severed SPRINT's cable, that cable was located completely within the right-of-way at or about 7390 Lincolnwood Avenue.

25. Upon information and belief, at the time RICCI/WELCH severed SPRINT's cable, Defendants had, in violation of the above-described statutes, regulations and industry standards: (a) failed to provide the statutorily required notice of excavation to JULIE; (b) failed to determine the estimated location of all underground utility facilities that might reasonably be expected to be encountered during excavation; (c) failed to take reasonable actions to inform itself of the location of SPRINT's fiber optic cable; (d) failed to determine the exact location of SPRINT's fiber optic cable by safe and acceptable means when Defendants' excavation operations reached the estimated location of that cable; (e) failed to plan the excavation to avoid damage to and interference with SPRINT's fiber optic cable; (f) failed to outline the dig site; (g) failed to have a foreman or manager on site who was competent and capable of ensuring that the Defendants' crew performed all its work in a careful and prudent manner and in compliance with all applicable statutes, regulations and industry standards; and (h) failed to adequately train its supervisors, managers and employees on the safe and prudent use of excavation equipment and/or the precautionary measures related to excavation in and around buried fiber-optic cable.

26. In light of the above-described statutes, regulations and industry standards, August 26, 2004, Defendants knew, or should have known, that their actions created a high probability of serious damage to SPRINT's fiber optic cable and related facilities. Defendants, nevertheless, recklessly disregarded this danger and failed to protect SPRINT's fiber optic cable and related facilities.

27. As a result of Defendants' actions, SPRINT has sustained disturbance to its right of use, and damages to and loss of use of its fiber-optic cable, which have resulted in actual

6

damages to SPRINT in excess of $75,000.00.

**WHEREFORE**, SPRINT prays this Court grant judgment in its favor against Defendants on SPRINT's First Claim for Relief, awarding SPRINT actual damages in excess of $75,000.00; punitive damages in an amount deemed sufficient to punish Defendants for their actions; interest thereon as allowed by law; all costs of this action; and such other and further relief as this Court may deem just and proper.

## SECOND CLAIM FOR RELIEF – NEGLIGENCE

28. SPRINT adopts and incorporates by reference all allegations contained in paragraphs 1 through 27 above.

29. Upon information and belief Defendants acted negligently in conducting its excavation activities on August 26, 2004. This negligent conduct included, but is not limited to: (a) failing to provide the statutorily required notice of excavation to JULIE; (b) failing to determine the estimated location of all underground utility facilities that might reasonably be expected to be encountered during excavation; (c) failing to take reasonable actions to inform itself of the location of SPRINT's fiber optic cable; (d) failing to determine the exact location of SPRINT's fiber optic cable by safe and acceptable means when Defendants' drilling operations reached the estimated location of that cable; (e) failing to plan the excavation to avoid damage to and interference with SPRINT's fiber optic cable; (f) failing to outline the dig site; (g) failing to have a foreman or manager on site who was competent and capable of ensuring that the Defendants' crew performed all its work in a careful and prudent manner and in compliance with all applicable statutes, regulations and industry standards; and (h) failing to adequately train its supervisors, managers and employees on the safe and prudent use of excavation equipment and/or the precautionary measures related to excavation in and around buried fiber-optic cable.

30. In light of the above-described statutes, regulations and industry standards, Defendants knew, or should have known, that its actions created a high probability of serious damage to SPRINT's fiber optic cable and related facilities. Defendants, nevertheless, negligently

7

and recklessly disregarded this danger and SPRINT's fiber optic cable and related facilities.

31.   As a result of Defendants actions and/or omissions, SPRINT has sustained damage to and loss of use of its fiber-optic cable, which has resulted in actual damages to SPRINT in excess of $75,000.00.

**WHEREFORE**, SPRINT prays this Court grant judgment in SPRINT's favor over and against Defendants on its Second Claim for Relief, awarding SPRINT actual damages in excess of $75,000.00; interest thereon as allowed by law; all costs of this action; and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED:   November 21, 2007          By:   _____
Mark Pollick (CASBN 67163)
MARK POLLICK APC
12520 High Bluff Drive - Suite 360
San Diego, California 92130
858.793.7936
Fax: 858.793.1235

**ATTORNEY FOR PLAINTIFF
SPRINT COMMUNICATIONS**