07687A-08001/JBC:caw

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPRINT COMMUNICATIONS COMPANY      )
L.P., a Delaware Limited Partnership,           )
                                                                        )
                    Plaintiff,                                       )      Case No. 07 CV 6665
                                                                        )
v.                                                                       )      Judge Moran
                                                                        )
RICCI/WELCH, INC., an Illinois corporation,   )      Magistrate Judge Denlow
                                                                        )
                    Defendant.                                   )

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES Defendant, RICCI/WELCH, INC., by and through its attorneys, JOHNSON & BELL, LTD., and for its Answer and Affirmative Defenses to Plaintiff's Complaint at Law, states as follows:

### JURISDICTION AND VENUE

1.      Plaintiff, SPRINT COMMUNICATIONS COMPANY L.P. (hereinafter "SPRINT"), with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas.

**ANSWER:**      This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph one.

2.      Defendant RICCI/WELCH, INC. (hereinafter "RICCI/WELCH") with its principal place of business at 4050 Industrial Avenue, Rolling Meadows, Illinois.  The acts and/or omissions giving rise to this action occurred in Lincolnwood, Cook County, Illinois.

**ANSWER**:    Admitted.

4.    The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00). This Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1).

**ANSWER**:    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph four.

5.    Venue is proper in this district under 28 U.S.C. §1391(a)(3) and (c).

**ANSWER**:    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph five.

## GENERAL FACTUAL BACKGROUND

6.    SPRINT is a telecommunications company that provides telecommunication services to individual and commercial users. SPRINT's telecommunication services are provided through, among other means, a nationwide network of fiber-optic cable which is buried underground. SPRINT's fiber-optic cable network is capable of carrying hundreds of thousands of telecommunications.

**ANSWER**:    On information and belief, Sprint is a telecommunications company that provides telecommunication services to individuals and commercial users through a network of underground cables. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph six.

7.    By agreement with and/or permit from Lincolnwood, Illinois, SPRINT possesses the right to install and operate a fiber-optic cable system in the right-of-way of certain public roads and highways in Lincolnwood, Illinois. By virtue of this agreement and/or permit,

SPRINT is entitled to undisturbed possession of that right. In accordance with this agreement and/or permit, SPRINT installed a fiber-optic cable and related facilities, in the right-of-way at or about 7390 Lincolnwood Avenue, in Lincolnwood, Illinois.

**ANSWER**:    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph seven.

8.    Upon information and belief, at the time of the acts and/or omissions giving rise to this action, RICCI/WELCH was performing excavation work to install a sewer line in the right-of-way of 7390 Lincolnwood Avenue, in Lincolnwood, Illinois.

**ANSWER**:    This Defendant denies the allegations of paragraph eight.

9.    Upon information and belief, the RICCI/WELCH personnel performed the work described in paragraph 8 and Defendants had the responsibility for supervising and controlling the work and ensuring the work was performed in a safe and prudent manner and in compliance with all applicable statutes, regulations and industry standards.

**ANSWER**:    This Defendant denies the allegations of paragraph nine.

<u>RELEVANT STATUTORY PROVISIONS</u>

10.    At the time of the acts and/or omissions giving rise to this action, the Illinois Underground Facilities Damage Prevention Act, 220 ILCS 50/1 - 50114 (the "Damage Prevention Act"), specifically 220 ILCS 50/4(d), required every person who engaged in non-emergency excavation to provide notice not less than 48 hours (exclusive of Saturdays, Sundays and holidays) in advance of the start of the excavation to the owners or operators of underground utility facilities in and near the excavation area through the State-Wide One-Call Notice System (JULIE"), Upon receipt of notice from JULIE, the operators of any underground telecommunications systems in or near the excavation area were required by 220 ILCS 50/10 to

mark the approximate location of their facilities within 48 hours with orange paint, flags or other suitable markings. "Approximate location" was defined as "a strip of land at least 3 feet wide but not wider than the width of the underground ... facility plus 1-112 feet on either side of such facility."

**ANSWER**:     This Defendant acknowledges the existence of the statute cited, the terms and conditions of which speak for themselves.  To the extent that the allegations of paragraph ten are inconsistent with the terms and conditions of the statute, Defendant denies same.

11.     In addition to providing the notice required by 220 ILCS 50/4(d), the Damage Prevention Act, specifically 220 ILCS 5014(a) and (b), required every person who was engaged in non-emergency excavation to take reasonable action to inform himself of the location of any underground utility facilities in and near the excavation area and to plan the excavation to avoid or minimize interference with underground utility facilities in or near the excavation area, 220 ILCS 50/4(c), also required every person to outline the dig site.

**ANSWER**:     This Defendant acknowledges the existence of the statute cited, the terms and conditions of which speak for themselves.  To the extent that the allegations of paragraph eleven are inconsistent with the terms and conditions of the statute, Defendant denies same.

12.     Pursuant to 220 ILCS 50/9, if it is shown by competent evidence in any action for damage to an underground utility facility that the damages resulted from excavation and that the person engaged in excavation failed to comply with any provisions of the Damage Prevention Act, that person "shall be deemed prima facie guilty of negligence".

**ANSWER**:     This Defendant acknowledges the existence of the statute cited, the terms and

conditions of which speak for themselves.  To the extent that the allegations of

paragraph twelve are inconsistent with the terms and conditions of the statute,

Defendant denies same.

RELEVANT REGULATIONS

13.     At the time of the acts and/or omissions giving rise to this action, federal OSHA

regulations, specifically 29 C.F.R. §1926.851(b)(10-(3), required an excavator to: (a) determine

the estimated location of all underground utility facilities that reasonably may be expected to be

encountered during excavation prior to the beginning of the excavation; (b) contact the owners or

operators of any underground utility facilities within the established or customary local response

times, advise them of the work and ask them to mark the locations of their underground facilities

prior to the start of the excavation; and (c) determine the exact location of all underground utility

installations by safe and acceptable means when the excavation approaches the estimated

location of those underground facilities.

**ANSWER**:     Defendant admits the existence of the OSHA Act, but denies any relevance or

application of the Act to the facts of the circumstances alleged in Plaintiff's

Complaint.

RELEVANT INDUSTRY STANDARDS

14.     At the time of the acts and/or omissions giving rise to this action, the American

National Standards Institute ("ANSI") had promulgated ANSI/EIA/TIA Standard 590A-1996,

entitled "Standard for Physical Location and Protection of Below-Ground Fiber-Optic Cable

Plant" (the "ANSI Standard"). The ANSI Standard covers "protective measures that should be

observed to reduce the probability of damage resulting from work operations in the vicinity of [underground] cable."

**ANSWER**:   This Defendant admits the existence of the ANSI Standard, but denies any application of the ANSI Standard to the instant action.

15.   The ANSI Standard provides that an excavator should: (a) be knowledgeable about, and follow, damage prevention laws and 29 C.F.R. § 1926.651); (b) notify all possibly affected utility facility owners and/or the appropriate One-Call notification center of the work to be performed; and (c) comply with all applicable statutes, OSHA regulations and accepted industry practices.

**ANSWER**:   This Defendant acknowledges the existence of the ANSI Standard cited.  To the extent that the allegations of paragraph fifteen are inconsistent with the terms of the ANSI Standard, Defendant denies same. Defendant denies the standard has application to this instant action.

16.   At the time of the acts and omissions giving rise to this action, the National Utility Locating Contractors Association ("NULCA") had promulgated standards for excavating in the vicinity of underground utilities entitled, "Excavation Practices & Procedures for Damage Prevention: A Guide for Protection of Underground Facilities" (1996) (the "NULCA Standards"). The purpose of the NULCA Standards is to ensure jobs are completed on time and to reduce the potential for an accident by utilizing good standards and practices. According to the National Transportation Safety Board, the guidelines set forth in the NULCA Standards incorporate federal OSHA requirements and identify "best practices" applicable to excavation work that promulgate good practices among the excavation community.

**ANSWER**:    This Defendant admits the existence of the NULCA Standard, but denies any

application of the NULCA Standard to the instant action.

17.    The NULCA Standards provide that an excavator should: (a) provide notice of

excavation to, and obtain a "dig ticket" from, the appropriate One-Call notification center; (b)

meet with any utility facility owners to review the excavation area; and (c) refrain from

excavating until all underground utility facilities in the excavation area had been marked.

**ANSWER**:    This Defendant acknowledges the existence of the NULCA Standard cited.  To

the extent that the allegations of paragraph seventeen are inconsistent with the

terms and conditions of the NULCA Standard, Defendant denies same. Defendant

denies the standard has any application to the instant case.

18.    At the time of the acts and omissions giving rise to this action, the United States

Department of Transportation ("USDOT") had promulgated a compendium of "best practices"

for avoiding damage to underground facilities during excavation entitled, "Common Ground:

Study of One-Call Systems in Damage Prevention Best Practices" (Aug. 1999). The purpose of

the "best practices" developed by the Excavation Task Team is to "contribute to the reduction in

the possibility and/or severity of damages or intrusions to [underground utility] facilities." The

criteria used to determine what practices should be considered "best practices" for excavators

were: (a) the practices were actually being used and could be documented; (b) the practices were

both practical and cost effective with current technology; and (c) the practices were considered

reasonable by the majority of the constituency that would be asked to implement the practices.

**ANSWER**:    This Defendant admits the existence of the USDOT Standard, but denies any

application of the USDOT Standard to the instant action.

19.    The "best practices" for excavators include: (a) using reasonable care to avoid damaging underground facilities and planning the excavation to avoid damage to, and minimize interference with, underground utility facilities; (b) adhering to all applicable federal and state safety regulations, including those concerning training, as they relate to the protection of underground facilities; (c) providing notice of excavation to, and obtaining a "dig ticket" from, the appropriate One-Call notification center; and (d) meeting with any utility facility owners to review the excavation area.

**ANSWER:**    This Defendant acknowledges the existence of the USDOT Standard cited. To the extent that the allegations of paragraph nineteen are inconsistent with the terms and conditions of the NULCA Standard, Defendant denies same. Defendant denies the standard had any application to the instant case.

20.    At the time of the acts and omissions giving rise to this action, JULIE was, pursuant to the Damage Prevention Act, operating as a One-Call notification center for the purposes of receiving the notices of excavation required by the Damage Prevention Act. JULIE had published an "Excavators Manual" explaining the Damage Prevention Act and setting forth recommended practices for safe excavation.

**ANSWER:**    This Defendant admits the existence of the Damage Prevention Act, but denies any application of the Damage Prevention Act to the instant action.

21.    JULIE's recommendations for safe excavation include: (a) providing notice of excavation to JULIE before beginning excavation; (b) maintaining a record of the notification to JULIE and of the dig number furnished by JULIE upon receipt of the notice of excavation; and (c) digging in a reasonable and prudent manner, taking all necessary and required measures to avoid damaging underground facilities.

**ANSWER:**    This Defendant acknowledges the existence of the Damage Prevention Act cited. To the extent that the allegations of paragraph twenty-one are inconsistent with the terms and conditions of the Damage Prevention Act, Defendant denies same. Defendant denies any application of the Damage Prevention Act to the instant action.

<u>FIRST CLAIM FOR RELIEF – TRESPASS</u>

22.    SPRINT adopts and incorporates by reference all allegations contained in paragraphs 1 through 21 above.

**ANSWER:**    This Defendant adopts and incorporates by reference all of its answers to paragraphs one through twenty-one above for its answers to paragraph twenty-two as though fully set forth herein.

23.    Upon information and belief, on August 28, 2004, RICCI/WELCH was excavating to install a sewer line in the right-of-way at or about 7390 Lincolnwood Avenue.

**ANSWER:**    This Defendant denies the allegations of paragraph twenty-three.

24.    Upon information and belief, on August 26, 2004, without SPRINT's knowledge or consent, and against SPRINT's will, RICCI/WELCH severed a SPRINT fiber-optic cable while performing the excavation described above. At the point RICCI/WELCH severed SPRINT's cable, that cable was located completely within the right-of-way at or about 7390 Lincolnwood Avenue.

**ANSWER:**    This Defendant denies the allegations of paragraph twenty-four.

25.    Upon information and belief, at the time RICCI/WELCH severed SPRINT's cable, Defendants had, in violation of the above-described statutes, regulations and industry standards:  (a) failed to provide the statutorily required notice of excavation to JULIE; (b) failed

9

to determine the estimated location of all underground utility facilities that might reasonably be expected to be encountered during excavation; (c) failed to take reasonable actions to inform itself of the location of SPRINT's fiber optic cable; (d) failed to determine the exact location of SPRINT's fiber optic cable by safe and acceptable means when Defendants' excavation operations reached the estimated location of that cable; (e) failed to plan the excavation to avoid damage to and interference with SPRINT'S fiber optic cable; (f) failed to outline the dig site; (g) failed to have a foreman or manager on site who was competent and capable of ensuring that the Defendants' crew performed all its work in a careful and prudent manner and in compliance with all applicable statutes, regulations and industry standards; and (h) failed to adequately train its supervisors, managers and employees on the safe and prudent use of excavation equipment and/or the precautionary measures related to excavation in and around buried fiber-optic cable.

**ANSWER:**     This Defendant denies the allegations of paragraph twenty-five, including subparagraphs (a), (b), (c), (d), (e), (f), and (h), and each and every one of them.

26.     In light of the above-described statutes, regulations and industry standards, August 26, 2004, Defendants knew, or should have known, that their actions created a high probability of serious damage to SPRINT's fiber optic cable and related facilities, Defendants, nevertheless, recklessly disregarded this danger and failed to protect SPRINT's fiber optic cable and related facilities.

**ANSWER:**     This Defendant denies the allegations of paragraph twenty-six.

27.     As a result of Defendants' actions, SPRINT has sustained disturbance to its right of use, and damages to and loss of use of its fiber-optic cable, which have resulted in actual damages to SPRINT in excess of $75,000.00.

**ANSWER:**     This Defendant denies the allegations of paragraph twenty-seven.

WHEREFORE, Defendant, RICCI/WELCH, INC., denies that the Plaintiff is entitled to judgment against it in any amount whatsoever.

SECOND CLAIM FOR RELIEF -- NEGLIGENCE

28.     SPRINT adopts and incorporates by reference all allegations contained in paragraphs 1 through 27 above.

**ANSWER**:     This Defendant adopts and incorporates its answers to paragraphs one through twenty-seven above as and for its answer to paragraph twenty-eight as though fully set forth herein.

29.     Upon information and belief Defendants acted negligently in conducting its excavation activities on August 26, 2004. This negligent conduct included, but is not limited to: (a) failing to provide the statutorily required notice of excavation to JULIE; (b) failing to determine the estimated location of all underground utility facilities that might reasonably be expected to be encountered during excavation; (c) failing to take reasonable actions to inform itself of the location of SPRINT'S fiber optic cable; (d) failing to determine the exact location of SPRINT'S fiber optic cable by safe and acceptable means when Defendants' drilling operations reached the estimated location of that cable; (e) failing to plan the excavation to avoid damage to and interference with SPRINT's fiber optic cable; (f) failing to outline the dig site; (g) failing to have a foreman or manager on site who was competent and capable of ensuring that the Defendants' crew performed all its work in a careful and prudent manner and in compliance with all applicable statutes, regulations and industry standards; and (h) failing to adequately train its supervisors, managers and employees on the safe and prudent use of excavation equipment and/or the precautionary measures related to excavation in and around buried fiber-optic cable.

**ANSWER:**     This Defendant denies the allegations of paragraph twenty-nine, including subparagraphs (a), (b), (c), (d), (e), (f), (g), and (h), and each and every one of them.

30.     In light of the above-described statutes, regulations and industry standards, Defendants knew, or should have known, that its actions created a high probability of serious damage to SPRINT's fiber optic cable and related facilities. Defendants, nevertheless, negligently and recklessly disregarded this danger and SPRINT's fiber optic cable and related facilities.

**ANSWER:**     This Defendant denies the allegations of paragraph thirty.

31.     As a result of Defendants actions and/or omissions, SPRINT has sustained damage to and loss of use of its fiber-optic cable, which has resulted in actual damages to SPRINT in excess of $75,000.00.

**ANSWER:**     This Defendant denies the allegations of paragraph thirty-one.

WHEREFORE, Defendant, RICCI/WELCH, INC., denies that the Plaintiff is entitled to judgment against it in any amount whatsoever.

### AFFIRMATIVE DEFENSES

For its affirmative defenses, Defendant Ricci/Welch avers as follows:

1.     The Complaint fails to state a claim against the Defendant upon which relief can be granted.

2.     Plaintiff assumed the risk, and is estopped from asserting its claims against the Defendant in that Plaintiff failed to properly identify the location of its property.

3.     Plaintiff's claims have been waived as a result of Plaintiff's own actions and omissions.

4.     Plaintiff's claims are barred by the doctrine of unclean hands.

5.     Plaintiff's alleged injuries and damages were caused by its own negligence.

6.     During the time period covering the claim, the Defendant complied with all applicable or relevant and appropriate requirements, federal and state statutes, regulations, rules, orders, guidelines, policies, permits and approvals, and violated no regulatory or statutory duty or standard of care then in existence.

7.     During the time period covering the claim, the Plaintiff failed to comply with all applicable or relevant and appropriate requirements, federal and state statutes, regulations, rules, orders, guidelines, policies, permits and approvals and standard of care then in existence.

8.     Any injuries, damages or conditions complained of by Plaintiff were caused by the acts or omissions of third parties not under the control of the Estate.

9.     Plaintiff has failed to mitigate its purported damages.

10.    To the extent any partners of the Plaintiff limited partnership are citizens of Illinois, this Defendant denies diversity jurisdiction is appropriate.

11.    This complaint is barred by the two-year limitations period in the Illinois Underground Facilities Damage Prevention Act, 220 ILCS 50/12.

                              Respectfully submitted,

                              s/ Joseph B. Carini, III
                              Joseph B. Carini, III Bar Number:  6198227
                              Attorney for Defendant
                                   RICCI/WELCH, INC.
                              Johnson & Bell, Ltd.
                              33 W. Monroe Street
                              Suite 2700
                              Chicago, IL  60603
                              Telephone:  312/372-0770
                              Fax:  312/372-9818
                              E-mail:  carinij@jbltd.com

## CERTIFICATE OF SERVICE

I do hereby certify that on January 18, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

> **s/ Joseph B. Carini, III**
> Joseph B. Carini, III Bar Number: 6198227
> Attorney for Defendant
>          RICCI/WELCH, INC.
> Johnson & Bell, Ltd.
> 33 W. Monroe Street
> Suite 2700
> Chicago, IL  60603
> Telephone: 312/372-0770
> Fax: 312/372-9818
> E-mail: carinij@jbltd.com